Michael L. Goodrich Galena City Attorney 211 West Seventh Street Municipal Building Galena, Kansas 66739
Dear Mr. Goodrich:
You request our opinion regarding whether the City of Galena may charter out of K.S.A. 14-1302 to allow for the appointment of a current city commissioner to the office of city manager if the member resigns his commission position.
You indicate that Galena is a city of the second class with a commission-manager form of government. The city manager, who is charged with administering the business of the City, is appointed by the Commission and holds office at its pleasure.[1] K.S.A. 14-1302
provides, as follows:
 "No member of the board of commissioners shall hold . . . any other city office; nor shall [a] commissioner ever be . . . appointed to any office created by or the compensation of which was . . . fixed by the board of commissioners while he . . . was a member . . . until after the expiration of at least two years after he . . . had ceased to be a member of said board." (Emphasis added.)
You indicate that the city commissioner who is interested in the position of city manager was a member of the Board when the compensation of the city manager was established, which would preclude him from being appointed as the city manager for two years after he "ceased to be a member." The City has enacted a charter ordinance to exempt itself from K.S.A. 14-1302 so that the Commission may consider a city commissioner as a candidate if he resigns his commission position.
Clearly, the City may use its constitutional home rule powers to charter out of K.S.A. 14-1302 because it is a statute that does not apply uniformly to all cities. [K.S.A. 14-1302 applies only to cities of the second class.][2] However, even if a charter ordinance is enacted, the larger question is whether the common law would still preclude the City Commission from appointing one of its members to the office of city manager if the member resigns his commission position.
In Attorney General Opinion No. 90-59, Attorney General Stephan concluded that the common law precludes a city governing body with appointing powers to place one of its own members in office even if the member resigns from the governing body. In that opinion, the Pittsburg City Commission wanted to appoint a commission member who was currently serving a two-year term to a vacant four-year position if the member resigned his current two-year position.
 "It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office, so that, even in the absence of a statutory prohibition, all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint. Similarly, a member of an appointing board is ineligible for appointment by the board . . . notwithstanding his term in the appointing body was about to expire. The result cannot be accomplished indirectly by his resignation with the intention that his successor shall cast his vote for him." (Citation omitted.)
General Stephan opined that the common law applied in Kansas by virtue ofState v. Dean,[3] which has never been overruled.
The charter ordinance in question simply allows the City to charter out of the statute and does not contain any substitute provisions. Consequently, even if the City successfully charters out of K.S.A. 14-1302, the common law may prohibit the City Commission from appointing one of its members to the office of city manager even if the member resigns his position.
However, the common law may be abrogated by either the Kansas Constitution or statute. In State ex rel. Stephan v. Board of CountyCommissioners of Sedgwick County[4] the Kansas Supreme Court upheld a county's home rule resolution increasing its quorum requirement that had the effect of abrogating the common law rule that a majority of a governing body constitutes a quorum. The Court discussed the impact of home rule on the common law and concluded that the county resolution did not violate the common law because the latter had been abrogated by the county home rule statute.
The same rationale would apply to city home rule which devolves from the Kansas Constitution. Therefore, if the City Commission is desirous of appointing a city commissioner to the office of city manager if he resigns his commission position, the charter ordinance should contain a specific provision which will have the effect of abrogating the common law prohibition. Otherwise, the common law will preclude the City Commission from appointing its member to the office of city manager even if he resigns the position.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] See K.S.A. 12-1011, K.S.A. 12-1014.
[2] See Attorney General Opinion No. 83-6.
[3] 103 Kan. 814 (1918).
[4] 244 Kan. 536 (1989).